# SELF-INSURED LONG TERM DISABILITY PLAN
## ADMINISTRATIVE SERVICES ONLY AGREEMENT
Calculation Arrangement with Checks

**Plan Sponsored By:**

PARKER HANNIFIN CORPORATION
6035 Parkland Blvd.
Cleveland, OH 44124

**Services Provided By:**

Liberty Life Assurance Company of Boston

# ADMINISTRATIVE SERVICES ONLY AGREEMENT

This Agreement is entered into between Parker Hannifin Corporation, hereinafter referred to as the Sponsor, and Liberty Life Assurance Company of Boston, hereinafter referred to as Liberty, and is effective on the date specified in Part Six.

WHEREAS, the Sponsor has established a self-insured Long Term Disability Plan, hereinafter called the Plan, which is outlined in the Plan Description attached to this Agreement as Annex A; and

WHEREAS, the Sponsor has requested Liberty to furnish the services described in Annex B attached to this Agreement, hereinafter referred to as the Services, with respect to the Plan;

NOW THEREFORE, in consideration of the mutual promises and covenants contained in this Agreement, the Sponsor and Liberty agree as follows:

Part One. GENERAL PROVISIONS

A. Except with respect to the extent the authority to review denied claims has been delegated to Liberty and such delegation is referenced in Annex B, final authority and responsibility for the Plan and its operation are vested in the Sponsor, and Liberty is empowered to act on behalf of the Sponsor for the Plan only as expressly stated in this Agreement or as mutually agreed in writing by Liberty and the Sponsor.

B. It is understood that the legal and tax status of the Plan under applicable law are matters for the Sponsor's determination, and that Liberty bears no such responsibility. It is further understood that Liberty is neither the Administrator, a Fiduciary nor a named Fiduciary of the Plan for purposes of the Employee Retirement Income Security Act of 1974 or any state law of a similar nature, except to the extent Liberty has agreed to assume the role of the "appropriate named fiduciary" under section 503 of ERISA to provide a full and fair review of any denials of claims for benefits under the Plan and such agreement is specifically referenced in Annex B.

Part Two. LIBERTY'S OBLIGATIONS

A. On behalf of the Sponsor, Liberty will perform the Services described in Annex B in connection with the Plan.

B. On the dates specified in Annex C, Liberty will report to the Sponsor the amount of the charges for the Services performed since the date of the last report.

C. Liberty will furnish other reports, as requested by the Sponsor and agreed to in writing by Liberty, regarding this Agreement.

D. Liberty will maintain a copy of all records used in the performance of any Service for the six (6) years following the calendar year in which the Service was performed. Thereafter, or in the event of this Agreement's earlier termination, at the Sponsor's request, Liberty will prepare a summary of recommended claims activity for the last 12 months. The Sponsor, after giving Liberty 30 business days' written notice, may review and audit any such records in Liberty's possession at any time during Liberty's normal business hours. All claims records are the property of the Sponsor and will be returned to the Sponsor after the termination of this Agreement, except that Liberty may retain copies of any records which relate to its review of denied claims.

E. Liberty will indemnify and hold harmless the Sponsor and its directors, officers and employees from any claims, lawsuits, settlements, judgments, costs, penalties and expenses, including but not limited to attorneys' fees if it is determined that any such liability was the direct consequence of criminal conduct, gross negligence or fraud on Liberty's part or any of its directors, officers or employees, provided however that in no event shall Liberty be liable for the payment of Plan benefits from its own funds. The Sponsor shall provide prompt and written notice to Liberty and consult with Liberty with respect to any liability for which it claims indemnity under this provision. ~~Failure to respond within 60 days of receipt of notice of claim for indemnification under this provision~~ shall constitute an absolute admission of liability for the claim to which the notice related.

ASO-AGREEMENT-1

## ADMINISTRATIVE SERVICES ONLY AGREEMENT
(Continued)

Part Two. LIBERTY'S OBLIGATIONS (Continued)

F. Liberty shall not disclose or use any non-public personally identifiable claimant information except for purposes of carrying out this Agreement, pursuant to an authorization, or as required or permitted by applicable state or federal law or regulation governing the use or disclosure of medical records and non-public personally identifiable information, including any state or federal laws pertaining to the confidentiality of medical records that include diagnosis and treatment for HIV and psychiatric or substance abuse conditions and problems. "Non-public personally identifiable information" is financial or medical information of or concerning a claimant which either has been obtained from sources which are not available to the general public or obtained from the person who is the subject of the information.

Part Three. THE SPONSOR'S OBLIGATIONS

A. The Sponsor will:
  1. furnish any information specifically required in Annex B;
  2. establish and maintain such accounts and records, assume such responsibilities and perform such functions required in that Annex; and
  3. furnish to Liberty any other information that Liberty may require to provide the Services.

B. Liberty will not be considered to have failed to perform its obligations under this Agreement if any delay or non-performance on its part is due, in whole or in part, to the Sponsor's failure to discharge its own obligations promptly.

C. The Sponsor will provide Liberty with the names of individuals authorized to act for the Sponsor in connection with this Agreement, together with a statement regarding the extent of their authority.

D. The Sponsor will indemnify and hold harmless Liberty and its directors, officers and employees from any claims, lawsuits, settlements, judgments, costs, penalties and expenses, including but not limited to attorneys' fees resulting from or arising out of or in connection with any function of Liberty under this Agreement, unless it is determined that the liability was the direct consequence of criminal conduct, gross negligence or fraud on Liberty's part or any of its directors, officers or employees. Liberty shall provide prompt and written notice to the Sponsor and consult with the Sponsor with respect to any liability for which it claims indemnity under this provision.

Failure to respond within 60 days of receipt of notice of claim for indemnification under this provision shall constitute an absolute admission of liability for the claim to which the notice related.

E. When applicable, the Sponsor will reimburse Liberty for any premium taxes or similar gross receipts taxes attributable to this Agreement, any related interest, fines or penalty charges, and any expenses incurred in reasonable legal efforts to avoid tax liability, whether successful or not. Liberty will make reasonable legal efforts to avoid liability for any such taxes, interest, or penalties. But Liberty need not make any such efforts, after consulting with the Sponsor, which in Liberty's best reasonable judgment are unwarranted in view of any of the following conditions:
  1. the prospects for success,
  2. the amounts at stake,
  3. the number of taxable years affected,
  4. the value of the case as a precedent,
  5. the time and expense involved, or
  6. the potential effects on Liberty's other business.

Reimbursement will be paid by the Sponsor within 30 days of Liberty's notification.

ASO-AGREEMENT-2

# ADMINISTRATIVE SERVICES ONLY AGREEMENT
(Continued)

Part Four. **CHARGES FOR THE SERVICES**

A. Charges for Services will be according to the Schedule of Charges described in Annex C attached to this Agreement. Charges will be payable to Liberty by the Sponsor within 31 days after each date on which Liberty notifies the Sponsor of the amount of the charges for the Services performed. Liberty will bill the Sponsor directly for its charges for the Services.

B. Liberty will not change the rates set forth in Annex C, Section I., "Administrative Service Charges", within the first 40 months of this Agreement, except that Liberty may change rates upon giving at least 31 days prior written notice of such change, at any time during the first 40 months if any of the following events occur:

   1. the number of participants changes by 15%; or
   2. the Sponsor materially modifies the terms of its Plan; or
   3. the Sponsor requests that Liberty provide additional Services that materially impact the cost or operational burden of performing the Services.

After the first 40 months Liberty may change the rates set forth in Annex C, Section I., "Administrative Service Charges", upon giving at least 31 days prior written notice of such change. No such changes will be made more often than once during any 12-month period that this Agreement is in effect. Such change will become effective on the date Liberty designates, and will form a part of this Agreement.

The charges set forth in Section II. of Annex C, captioned "Other Administrative Services Only Charges", are not subject to the above paragraph as the rates shown in that Section are the charges at the date this Agreement is effective and they will be adjusted to the charge applicable to the type of service at the date the service is rendered.

Part Five. **TERMINATION OF AGREEMENT**

A. This Agreement may be terminated by the mutual agreement of both parties or by one party upon 30 days advance written notice to the other party. Alternatively, this Agreement will terminate on the earliest of:

   1. the date specified in a written notice Liberty provides to the Sponsor of Liberty's intent to terminate this Agreement because of the Sponsor's failure to remit to Liberty charges for Services within 31 days from the date they were due.

   2. the date specified in a written notice Liberty provides to the Sponsor of Liberty's intent to terminate this Agreement because any state or other jurisdiction enacts a law or interprets existing law in a manner which Liberty has determined, upon the advice of its counsel, will prohibit the continuance of this Agreement;

   3. termination of the Plan;

   4. modification of the Plan. However, the modification will not have the effect of terminating this Agreement:

      a. if this Agreement is changed to make the modified plan the Plan under this Agreement; or
      b. while this Agreement is being continued, by mutual agreement between Liberty and the Sponsor, in anticipation of such a change.

# ADMINISTRATIVE SERVICES ONLY AGREEMENT
(Continued)

Part Five.  TERMINATION OF AGREEMENT (Continued)

A. This Agreement may be terminated by the mutual agreement of both parties or by one party upon 30 days advance written notice to the other party. Alternatively, this Agreement will terminate on the earliest of: (Continued)

   5. the date specified in a written notice given by Liberty to the Sponsor of Liberty's intent to terminate this Agreement because of the Sponsor's failure to reimburse Liberty for any benefit payments that Liberty may make in good faith on the Sponsor's behalf, within 24 hours of receipt of the Funding Report.

B. In the event that this Agreement terminates, Liberty will stop furnishing claims management Services at 12:01 A.M. on the termination date.

C. The rights and duties contained in any indemnification and/or hold harmless provisions of this Agreement will survive its termination.

Part Six.  MISCELLANEOUS PROVISIONS

A. This Agreement includes all attached Annexes, and may be changed by an amendment signed by the Sponsor and a Liberty officer.

   No term or provision of this Agreement will be waived and no breach will be excused, unless the waiver or consent is signed by the party claimed to have waived or given consent.

B. The parties to this Agreement will promptly advise each other in writing of any potential or actual legal or regulatory proceedings concerning the Plan or the activities of either party with respect to the Plan. Furthermore, the parties agree to cooperate with each other about potential or actual legal or regulatory proceedings.

C. Any of the functions to be performed by Liberty under this Agreement may be performed by Liberty or any of its subsidiaries, affiliates, or parent companies, or any independent entity with whom Liberty contracts. The references in Subpart Three. D and Three. E of the Agreement and I.A.2 of Annex B to Liberty, its directors, officers and employees, will also include such parent, affiliate or subsidiary, its directors, officers, and employees and such independent entity.

D. The Sponsor authorizes Liberty to communicate to any reinsurer, with whom the Sponsor may contract for excess coverage, such timely information concerning the Sponsor's operations and loss experience as the reinsurer may require.

E. Notwithstanding any other provision to the contrary, Liberty will have sole discretion in determining whether any claim or suit, arising by reason of any liability or alleged liability of Liberty in connection with the performance of any of its functions under this Agreement, will be paid, compromised, litigated or appealed, and Liberty will also have sole discretion regarding all matters of procedure and defense for any such claim or suit.

## ADMINISTRATIVE SERVICES ONLY AGREEMENT
(Continued)

Part Six.   MISCELLANEOUS PROVISIONS (Continued)

F.  While this Agreement is in effect and within one (1) year after its termination, Liberty, after giving the Sponsor 30 business days' written notice, may audit the Sponsor's, and any affiliated employer's books and records which are relevant to this Agreement.

G.  This Agreement shall be governed by applicable federal law and by the laws of the state of Massachusetts.

H.  The effective date of this Agreement is:   September 1, 2008

   The number of this Agreement is:   PD3-890-449127-02

IN WITNESS WHEREOF, Liberty and the Sponsor have caused this Agreement to be executed in duplicate by their respective officers duly authorized to do so.

LIBERTY LIFE ASSURANCE COMPANY OF BOSTON

*[signature]*



Liberty Life Assurance Company of Boston

# ANNEX A
## of
## ADMINISTRATIVE SERVICES ONLY AGREEMENT

### BENEFIT DESCRIPTION

Parker Hannifin Corporation's Long Term Disability Plan is self-funded. Liberty Life Assurance Company of Boston provides claim administrative services. The Sponsor agrees to pay the benefits provided by this Plan in accordance with its provisions. The Sponsor's Long Term Disability Plan is governed by the Employee Retirement Income Security Act (ERISA).

**PLEASE READ THIS PLAN CAREFULLY FOR FULL DETAILS.**



Liberty Life Assurance Company of Boston

# ANNEX B
## of
## ADMINISTRATIVE SERVICES ONLY AGREEMENT

Administrative Services to be furnished by Liberty and certain obligations of the Sponsor in connection with the Benefit Plan described in Annex A of the Agreement and referred to as the Plan.

I. **Claims Services to be furnished on behalf of the Sponsor's self-insured Plan with respect to those classes of individuals for which Liberty will make claim payments as agreed by Liberty and the Sponsor.**

   A. **Claims Payments and Control** - While the Agreement is in effect, Liberty will accept for processing and payment or denial, all claims for benefits under the Plan for which proof of claim is furnished in a form or format satisfactory to Liberty.

   In processing, reviewing and administering claim submissions Liberty shall make the initial decision whether a claim should be paid under the Plan. In addition, pursuant to a delegation by the appropriate fiduciary of the Plan, Liberty shall assume the responsibility of the "appropriate named fiduciary" under Section 503(b) of ERISA to provide a full and fair review of denied claims. In performing such duty, Liberty shall have the discretionary authority to determine eligibility for Long Term Disability benefits under the Plan and shall have the discretionary authority to construe the terms of the Plan with respect to the determination of eligibility for Long Term Disability benefits including the discretionary authority to construe any disputed and doubtful Plan terms related to such determination subject to the right of the Sponsor to provide guidance as to the proper construction of a Plan provision as set out below in subpart I.A.2. below. Liberty shall be deemed to have properly exercised such authority unless it has abused its authority by acting arbitrarily and capriciously. In no event does Liberty assume any other fiduciary responsibility under ERISA with respect to the Plan, including, but not limited to, the responsibility to make payments of benefits and/or fund benefit payments under the Plan. Further, the determination whether a claimant falls within an eligible class of employees covered by the Plan shall be the Sponsor's or other Plan fiduciary designated by the Sponsor, but in no event shall such responsibility be Liberty's and Liberty shall be entitled to rely upon and be bound by information furnished to it by the Sponsor or such other Plan fiduciary, as more described in subpart 1.A.1 below.

   1. <u>Determination of Eligibility</u> - When forwarding the claim to Liberty for review, the Sponsor will furnish to Liberty, in a form or format satisfactory to Liberty, information identifying by name the persons then participating under the Plan, the effective dates of their participation, and the extent of their participation in the Plan. For all purposes Liberty will rely on and be bound by the information furnished to it by the Sponsor; and the Sponsor will hold Liberty harmless for any inaccuracy in such information.

# ANNEX B
## of
## ADMINISTRATIVE SERVICES ONLY AGREEMENT
(Continued)

I. Claims Services to be furnished on behalf of the Sponsor's self-insured Plan with respect to those classes of individuals for which Liberty will make claim payments as agreed by Liberty and the Sponsor. (Continued)

A. Claims Payments and Control - (Continued)

2. <u>Claims Processing</u> - The Sponsor must notify Liberty in a format satisfactory to Liberty when notice of claim for disability benefits is received. The notice must be provided at approximately the mid-point of the elimination period. Such notice will:

    1. identify the Sponsor; and
    2. contain other information regarding the:

        a. time of disability;
        b. place of disability;
        c. circumstances of disability;
        d. nature of disability; and
        e. name and address of the employee.

Liberty will review each new claim within 3 business days of receipt, and the claim will be approved, pended or denied. If sufficient information is not provided to Liberty to make a claim determination (approval or denial), Liberty will contact the appropriate party (employer, employee and/or physician) no later than 3 business days (from the claim receipt date) to request the information necessary to complete its review.

During the term of this Agreement Liberty will:

1. review and investigate all claims with a duration equal to or greater than the elimination period for the Plan shown in Annex A to establish whether benefits are payable to the claimant under the terms of the Plan; and

2. determine whether benefit payments should continue, whether an independent medical examination should be given, or whether a referral to rehabilitation services should occur.

Where no benefit is payable because of an exclusion or limitation of the Plan, or because the claimant is not eligible for benefits under the Plan, Liberty will notify the Sponsor and claimant in writing of the rejection of the claim.

In the event that the Sponsor determines that Liberty has misinterpreted the Plan and so informs Liberty in writing, all claims reported after delivery of such writing will be processed and paid in accordance with the Sponsor's interpretation as set forth in such writing. Provided, however, that unless Liberty specifically agrees in writing the Sponsor's interpretation will not be binding regarding any insurance policy Liberty or its parents or affiliates issued.

If Liberty, upon the advice of its legal counsel, determines that the Sponsor's interpretation would cause Liberty to violate applicable law, Liberty will so inform the Sponsor and will not take any action to implement the Sponsor's interpretation until Liberty is satisfied with the legality of the Sponsor's interpretation.

All doubtful claims, except those for which Liberty has agreed to assume the role of the "appropriate named fiduciary" under Section 503 of ERISA for purposes of reviewing denied claims, will be referred to the Sponsor for its determination of liability.

# ANNEX B
## of
## ADMINISTRATIVE SERVICES ONLY AGREEMENT
(Continued)

I. Claims Services to be furnished on behalf of the Sponsor's self-insured Plan with respect to those classes of individuals for which Liberty will make claim payments as agreed by Liberty and the Sponsor. (Continued)

   A. Claims Payments and Control - (Continued)

      3. Claims Control - Liberty may investigate any claim and/or request that the claimant be examined at any point during the life of the claim. In addition, Liberty will take such steps as may be necessary to give effect to any integration or benefit offset provisions of the Plan.

      4. Payment of Claims - Whenever Liberty determines a benefit to be payable under the Plan, Liberty will prepare a draft on the funds of the Sponsor for the amount of payment and forward that draft to the covered employee or, if applicable, the employee's assignee, unless the Sponsor directs otherwise.

         Liberty will be responsible for:

         a. verifying drafts' authorized signatures and ascertaining the completeness and regularity of endorsements under Uniform Commercial Code standards;
         b. verifying drafts' amounts and payees as issued; and
         c. producing all reports that will be mutually agreed upon.

         Notwithstanding the provisions of Subpart Three D. in the Agreement, with respect to any review of drafts agreed to by Liberty under this Subpart, Liberty agrees to bear any loss sustained by the Sponsor caused solely by the negligent acts or omissions of Liberty. The Sponsor agrees to reimburse Liberty for any benefit payments that Liberty may make in good faith on the Sponsor's behalf, within 24 hours of receipt of the Funding Report.

      5. Claims Review - For claims for which Liberty has agreed to assume the role of the "appropriate named fiduciary" under Section 503 of ERISA in connection with reviewing denied claims, Liberty will establish a procedure for reviewing disputed claims and any requests from claimants for a review of rejected claims. For claims for which Liberty has not agreed to assume such a role, the Sponsor will be responsible for establishing such a procedure and making determinations on final disposition of any ERISA appeals on claims that were denied or terminated by Liberty. In the latter case, Liberty will provide the Sponsor with advice on any such claims. Liberty will provide the Sponsor with advice on any such claims. The Sponsor will make the determination as to the final disposition of any ERISA appeals on claims that were denied or terminated by Liberty. The appeal procedures will be outlined in the denial letter provided to the employee. The employee will have 180 days from the date of the denial letter to submit an appeal. The appeal must be in writing (from the employee or their legal representative) and contain additional information to support the claim.

II. Other Services To Be Furnished In Connection With The Plan

   A. Cost Analysis

      At the Sponsor's request and subject to Liberty's right to impose an additional charge, Liberty will furnish the Sponsor with an estimate of the benefit cost of any proposed modification or extension of the Sponsor's Benefit Plan described in Annex A. In connection therewith, Liberty will notify the Sponsor of any change in the Schedule of Charges under the Agreement which would be required if the Plan were so modified or extended.

# ANNEX B
## of
## ADMINISTRATIVE SERVICES ONLY AGREEMENT
(Continued)

II. Other Services To Be Furnished In Connection With The Plan (Continued)

B. Materials to be Furnished

Upon request, Liberty may furnish the Sponsor with a supply of Liberty's standard forms to be used for submission of claims for benefits under the Plan, together with instructions for their use.

C. Administrative Services - Managed Care Services and Other Services

Liberty will make the following support services available on a fee for service basis and will be utilized if the Sponsor agrees to have such services provided to complement the Sponsor's self-funded program. Expenses of $1,500 or more per activity for any Administrative Service will be approved by the Sponsor before delivery of such service.

<u>Nurse Case Management (including but not limited to)</u>

- <u>Medical Intervention</u> - Utilizing nurses (R.N.'s) in the Managed Disability Services Unit. The nurse contacts the disabled employee, medical provider and employer/Sponsor and assesses the extent of disability and level of care being administered. Where appropriate, the R. N. may refer the employee to quality medical providers or services, then follows up regularly with the employee, employer, claim analyst and provider to review medical progress and help coach and promote the early return-to-work.

<u>Medical (including but not limited to)</u>

- <u>Independent Medical Examination (IME)</u> - Examination conducted by professionals of the same or different discipline as the employee's physician or provider. Includes review of medical records, x-ray films, MRI's, CT's and physical examination of the employee. It may include recommendations for additional testing to differentiate diagnosis or further evaluate treatment plans. No conversation takes place between examining physician and treating physician. No follow up treatment from the examining physician.

- <u>Peer Review</u> - Comprehensive review of the employee's medical records performed by a professional in the same discipline as the provider. Does not include physical examination of the employee. Usually involves conversation between the reviewer and treating provider about the treatment plan.

- <u>Second Opinion</u> - Examination conducted by professionals of the same or different discipline as the employees physician or provider. Includes review of medical records, x-ray films, MRI's, CT's and physical examination of the employee. It may include recommendations for additional testing to differentiate diagnosis or further evaluate treatment plans. No conversation takes place between examining physician and treating physician. Could have follow up treatment with examining physician.

- <u>Functional Capacity Evaluation (FCE)</u> - A physical or occupational therapist performs an objective assessment of an employees functional levels and physical capabilities. Used to determine level of work capability. Evaluations can be performed at the work site or at a therapy office.

ASO-ANNEX-B-4

PD3-890-449127-02 R (1) Effective September 1, 2008

Ronk v. PH 239

# ANNEX B
## of
## ADMINISTRATIVE SERVICES ONLY AGREEMENT
(Continued)

- Independent Psychological Examination (IPE) - Psychological examination conducted by psychologist or psychiatrist. Includes review of medical records and in person evaluation of the employee. It may include recommendations for additional testing to differentiate diagnosis or further evaluate treatment plans. This does not include contact between the treating professional and the examining professional, and there is no follow up treatment from the examining professional.

- Workplace Therapy or Rehabilitation at Work - Utilizes Liberty's POWER ® program. Workplace therapy takes place at the work site and addresses disabilities needing immediate attention and programs to transition employees back into the workplace. Observing the employee at work, physical therapy, job conditioning, modified duty, pain management techniques, warm-up and flexibility programs, functional body mechanics training and pacing techniques are used.

- Additional Medical Testing and Treatment - Diagnostic testing and treatment related to recommendations from IPE's, IME's or Second Opinion, other diagnostic testing and treatment, lab work, imaging studies (X-rays), therapies, medications, prostheses, medical supplies and physical therapy.

- Medical Records - Medical records contain useful information such as office notes, detailed treatment plans and test results. These are often requested by the claim analyst or RN case manager when assessing overall disability and determining the best claim management course.

### Vocational Case Management (including but not limited to)

- Vocational Assessment - A comprehensive analysis of employability, which takes into consideration medical status, vocational status, labor market information and earning capacity.

- Transferable Skills Analysis (TSA) - An analysis of the employees work experience and education, along with restrictions and limitations, to determine other occupations which he or she is reasonably qualified.

- Labor Market Survey (LMS) - The study of a particular labor market to determine if employment opportunities exist in that geographic location. May include analysis of the growth and or decline in the number of jobs and wage data.

- Job Task Analysis - Vocational Rehabilitation Specialist assists in defining the essential and nonessential physical/cognitive duties of the specified job as it is performed during a traditional 8 hour work day.

- Vocational Evaluation/Testing - Objective testing of employees aptitudes, interests, values and attitudes.

# ANNEX B
## of
## ADMINISTRATIVE SERVICES ONLY AGREEMENT
(Continued)

II. Other Services To Be Furnished In Connection With The Plan (Continued)

   C. Administrative Services - Managed Care Services and Other Services (Continued)

      <u>Vocational Case Management (including but not limited to)</u> (Continued)

- <u>Vocational Exploration/Counseling/Planning</u> - Using the information gathered during Vocational Assessment and Vocational Evaluation/Testing, the Vocational Rehabilitation Counselor proceeds to discuss options for returning to work. This counseling process is used to identify the best vocational alternatives given employee's medical status, work and education history (skills), financial status, etc.

- <u>Job Placement Assistance</u>- These are activities to assist the employee with obtaining a new job. This may include identifying job openings, arranging interviews, preparing resumes and cover letters, teaching interview skills, etc.

- <u>Ergonomic Assessment</u> - Customize work station to best ergonomic fit for the employee's specific body structure and/or for specific impairments resulting from their disability. This may include adjusting desk top height, computer monitor height, keyboard, mouse pads and/or include adaptive equipment and technology, and analysis of the entire work environment for the employee.

      <u>Investigation Services (including but not limited to)</u>

- <u>Professional Investigation Services</u> - Professional Investigation services typically include activities check, records check and /or surveillance. These investigations are only initiated when the information provided is inadequate or questionable, and the investigation is necessary to resolve.

- <u>Disability Evaluation Interview</u> - In person interview with the employee conducted by a professional investigator to obtain information on the employee's activities and to assess their lifestyle to provide further analysis of the disability.

III. Reports

   Liberty will provide the following reports at no additional cost to the Sponsor:

      1. <u>Long Term Disability Reserve Report</u> (Quarterly)

      2. <u>Long Term Disability Paid and Incurred Report</u> (Quarterly)

      3. <u>Long Term Disability Usage and Trend Report</u> (Quarterly)

      4. <u>Funding Report</u> (Monthly, unless issuance of benefits is more frequent)



Liberty Life Assurance Company of Boston

# ANNEX C
## of
## ADMINISTRATIVE SERVICES ONLY AGREEMENT

## SCHEDULE of CHARGES

I. **Administrative Service Only Charges**

The monthly expense charge for the Administrative Services provided under the Agreement for each of the 16 months beginning on September 1, 2008 and ending on December 31, 2009, and for succeeding 12 month periods will be determined as follows:

For Administrative Services Charges, the sum of (A + B) below:

A. Number of Employees covered under the Plan X monthly Per Employee Rate

   Monthly per Employee Rate:        $2.25

   The actual monthly Employee exposure is the actual total number of Employees in Active Employment covered under the Plan as of the first day of the month.

B. Ongoing Takeover Claim Review Rate X number of Ongoing Takeover Claims (submitted to Liberty from the prior carrier for ongoing review)

   Ongoing Takeover Claim Review Rate:    $25.00 (per takeover claim per month)

Note: While this Agreement remains in effect, the above rates shown in Item I shall not be increased for the 3 year period beginning on the Effective Date of this Agreement except as permitted under Part Four B of the Administrative Services Only Agreement.

# ANNEX C
## of
## ADMINISTRATIVE SERVICES ONLY AGREEMENT

### SCHEDULE of CHARGES
(Continued)

II. Other Administrative Services Only Charges

The amounts shown below illustrate the national average prevailing rates for the services at the date this Agreement is effective and they will be adjusted to the charge applicable to the type of service at the date the service is rendered.

For Administrative Services utilized:

### Medical

- <u>Independent Medical Examination (IME)</u> – Typically ranges from $750 - $1,500 for each investigation (depending upon location and specialty)

- <u>Peer Review</u> - $250- $300 per hour (may increase depending upon location and specialty)

- <u>Second Opinion</u> - Varies depending on specialty and complexity.

- <u>Functional Capacity Evaluation (FCE)</u> - Typically ranges from $700 - $1,000 for each evaluation.

- <u>Independent Psychological Examination (IPE)</u> - Typically ranges from $1,000- $2,000 for each examination (depending upon specialty, information needed, how long the claimant has been out).

- <u>Workplace Therapy or Rehabilitation at Work</u> - $115 per hour plus travel

- <u>Additional Medical Testing and Treatment</u> - Varies by complexity.

- <u>Medical Records</u> - Typically $30 per request

### Vocational Case Management

- <u>Vocational Assessment</u> - Ranges from $100 - $600 for each assessment.

- <u>Transferable Skills Analysis (TSA)</u> - Typically ranges from $100 - $400 for each analysis.

# ANNEX C
## of
## ADMINISTRATIVE SERVICES ONLY AGREEMENT

## SCHEDULE of CHARGES
(Continued)

II. Other Administrative Services Only Charges (Continued)

<u>Vocational Case Management</u> (Continued)

- <u>Labor Market Survey (LMS)</u> - Typically ranges from $500 - $1,000 for each survey.

- <u>Job Task Analysis</u> - Typically ranges from $250 - $350 for each analysis.

- <u>Vocational Evaluation/Testing</u> - Varies depending on extent of testing.

- <u>Vocational Exploration/Counseling/Planning</u> - Varies depending on specific case needs.

- <u>Job Placement Assistance</u> - Varies depending on extent of services needed by each employee.

- <u>Re-training</u> - Varies depending on extent of services needed by each employee.

- <u>Vocational Consultants</u> - $95 per hour.

- <u>Ergonomic Assessment</u> - typically ranges from $600 - $1,000 for each assessment.

<u>Investigation Services</u>

- <u>Professional Investigation Services</u> - $50 - $70 per hour. Each limited activity check typically ranges from $300-$400. Extensive investigation involving surveillance ranges from $1,000-$1,500.

<u>Social Security</u>

- <u>Social Security Advocacy Program</u> - on average $2,200.

Liberty will send a statement to the Sponsor each month detailing the services performed and their related actual costs.